**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**ROBERT WHITAKER, et al.,**

      **Plaintiffs,**

  **v.**                                      **CIVIL ACTION NO. 4:05cv130**

**CONWAY H. SHEILD, III et al.,**

      **Defendants.**

*MEMORANDUM OPINION AND ORDER*

This matter comes before the Court on the Motions of Conway H. Sheild, III ("Sheild"), Ralph M. Goldstein ("Goldstein"), Jones, Blechman, Woltz & Kelly, P.C. (the"Law Firm"), the City of Newport News ("City"), Industrial Development Authority of the City of Newport News and Economic Development Authority of the City of Newport News (collectively, "NNEDA"), Neil Morgan ("Morgan"), Florence G. Kingston ("Kingston"), and Douglas Winstead ("Winstead") (collectively, "Defendants") to Dismiss the Complaint of Robert Whitaker ("Mr. Whitaker"), Barbara Whitaker ("Ms. Whitaker"), and the Golden Years, Inc., t/a BWC Adult Home ("Golden Years") (collectively, "Plaintiffs").  For the reasons set forth below, Defendants' Motions to Dismiss Count I (Tortious Interference with Contract), Count II (Tortious Interference with Economic Expectancy), and Count VI (Conversion) are **GRANTED**.  Defendants' Motions to Dismiss Count III (violation of Virginia Business Conspiracy Act, VA. CODE ANN. §§ 18.2-499 to 501) is **GRANTED** as to Kingston, Morgan, and Winstead, and **DENIED** as to Goldstein and Sheild.  Kingston's Motion to Dismiss Count IV (violation of 42 U.S.C. § 1983) is

**DENIED**.  Goldstein's Motion to Dismiss Count IV and Count V (violation of 42 U.S.C. §

1981) is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Whitaker is the President of Golden Years, Inc., a minority-owned Virginia

corporation that provides assisted living to patients with dementia and Alzheimer's disease.

Golden Years, Inc. owned property for the operation of its business at 9712 Jefferson Avenue,

and 600 Woodfin Road in Newport News, Virginia ("the subject property").

On or about February 14, 2002, Defendant Goldstein, an attorney, principal, and

shareholder of the Law Firm, approached Ms. Whitaker with an interest in purchasing the subject

property for $355,000.  At that time, Ms. Whitaker informed Goldstein that she would need to

speak to her lawyer about any proposed sale of the subject property.  Ms. Whitaker and her

lawyer, Defendant Sheild, held a meeting at his office.  While waiting for her meeting Ms.

Whitaker saw Goldstein at the law office, and took notice that his name was on the firm's

marquee.  In her meeting with Sheild, she asked whether Goldstein and Sheild worked together.

Initially, Sheild denied knowing or affiliating with Goldstein, however, he later admitted that

Goldstein also worked at the Law Firm, and that they were both partners.  Sheild reassured Ms.

Whitaker that her file would be "hidden" from Goldstein.  During the meeting Ms. Whitaker

informed Sheild that she believed Goldstein's offer was too low, as it was barely enough to pay-

off the existing mortgage loans.  Even with Ms. Whitaker's concerns, Sheild urged her to accept

the option to purchase the subject property on Goldstein's terms.

Taking the advice of Sheild, on May 10, 2002, Plaintiffs entered into an option real estate

contract with Goldstein.  Goldstein entered into the contract on behalf of NNEDA.  NNEDA are

political subdivisions of the Commonwealth of Virginia charged with the task of creating new jobs and diversifying the City's economy.  NNEDA  acquired the land for the purposes of constructing a new police headquarters.  At the time Plaintiffs executed the option contract with Goldstein, they were unaware that he was acting as a representative of NNEDA, and they were also unaware of the future purposes for the acquisition of the subject property.  On the other hand, Sheild, Plaintiffs counsel, knew that Goldstein represented NNEDA and he knew the reason NNEDA desired to purchase the land from Plaintiffs.  However, Sheild failed to disclose this information to Plaintiffs.

In July 2002, Tricia Wilson ("Wilson"), Business Development Specialist for the City, and former Business Retention/Development Coordinator, John Vann ("Vann") had a discussion in which Wilson told Vann that Goldstein "took advantage of a conflict of interest" between him and his law partner, Sheild.  Wilson also informed Vann that Winstead, the City's Manger of Financial Services, had used derogatory and discriminatory language when referring to Plaintiffs.  In August 2002, the City formed a relocation team to assist Plaintiffs in relocating to another area after the City's acquisition of the subject property.  During this time period, meetings were held to discuss several options with respect to the acquisition of Plaintiffs' property and the relocation of their business.  However, no actions were taken on any of the options.  In fact, Vann held a meeting with NNEDA chairman, Allen Jones to discuss the manner in which Plaintiffs were being treated.  Vann was told that Plaintiffs were being treated unfairly because they were black.

On March 7, 2003, NNEDA executed a Seller's Possession Agreement that allowed Plaintiffs to remain on the subject property until September 30, 2003.[1]  On October 6, 2003,

---

[1] NNEDA later extended the Seller's Possession Agreement through December 31, 2004.

Plaintiffs executed a sales contract for the purpose of relocating to a new location.  During this period of time, Plaintiffs incurred more than $160,000 in costs associated with their efforts to relocate.  On February 23, 2004, Vice Mayor Charles Allen voiced his concerns about the "conflict of interest" between Defendants Goldstein and Sheild, and instructed the City to give Plaintiffs the "maximum assistance to relocate."  On February 25, 2004, Ms. Whitaker met with City Manger, Edgar Maroney, to voice her concern about the unfair manner in which she believed Plaintiffs were being treated because of their race.  During this period of time Plaintiffs continued to make attempts to procure private loans to fund the acquisition and renovation of their projected relocation property.  However, Plaintiffs were unsuccessful in these attempts.

On March 1, 2004, Wilson wrote a letter to Ms. Whitaker to inform her that Plaintiffs could qualify for a Newport News Urban Development Action Grant ("NNUDAG") loan from the Newport News Redevelopment and Housing Authority ("NNRHA"), political subdivision of the Commonwealth.  The NNUDAG loan is used to provide low-interest loans to businesses which generate employment for low-income residents.  The City approached the NNRHA about the possibility of providing Plaintiffs with a NNUDAG loan for the acquisition and renovation their relocation property.  The City, in conjunction with NNRHA, had previously awarded a NNUDAG loan to LARDA Autoworks to help it relocate after the City acquired its building for the same municipally funded project.  Plaintiffs submitted the necessary paperwork to process their NNUDAG loan application.  On July 12, 2004, Plaintiffs received a NNUDAG loan commitment letter authorizing them to borrow $300,000 to finance the acquisition and renovation of their relocation property.  Plaintiffs signed the loan documents on July 27, 2004.  However, Plaintiffs believed that based on the lending criteria for a NNUDAG loan, they should

have qualified for a loan amount of $500,000.

On December 29, 2004, Plaintiffs received a letter from NNEDA advising them that counsel had been retained to institute a suit requiring Plaintiffs to vacate the subject property and pay any unpaid rents.

Plaintiffs initially filed a Motion for Judgment in the Circuit Court of the City of Newport News.  However, on August 31, 2005, Defendants filed a Notice of Removal with this Court.  On September 26, 2005, Defendants filed separate Motions to Dismiss.  On October 11, 2005, Plaintiffs filed a Memorandum in Opposition to the Motions to Dismiss.  On October 18, 2005, City filed its reply.  The other defendants filed their replies on October 18, 2005.  On December 21, 2005, this Court held a hearing on all motions.  As a result of the hearing, the Court granted Plaintiffs thirty days to file a complaint amending Counts IV and V.  On January 20, 2006, Plaintiffs filed their Amended Motion for Judgment.  On February 2, 2006, Defendants Sheild, Goldstein, Law firm, and City filed Motions to Dismiss the complaint.  On February 6, 2006, NNEDA filed a Motion to Dismiss.  Defendants Morgan, Kingston, and Winstead filed their Motion to Dismiss on February 9, 2006.  On February 15, 2006, Plaintiffs filed a Memorandum of Law in Opposition to Goldstein's Motion to Dismiss.  Additionally, on February 23, 2006, Plaintiffs filed a Memorandum of Law in Opposition to Kingston's Motion to Dismiss.  On March 3, 2006, Kingston filed its reply.  On April 13, 2006, the Court conducted a final hearing on the Motions.  This matter is now ripe for adjudication by the Court.

## II.  LEGAL STANDARDS

### A.  Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted.  Although courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference, *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985), courts will favorably construe the allegations of the complainant.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Courts must assume that the facts alleged in the plaintiff's complaint are true.  *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).   A court will only grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim."  *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982) (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969)).  A plaintiff's misconception or mislabeling of the proper legal theory of the claim is not grounds for dismissal; a court must look to any legal theory supported by the facts alleged, so long as the plaintiff's complaint gives fair notice of the claim and the grounds upon which it rests.  *Williams v. New Castle County*, 970 F.2d 1260, 1265-66 (3d Cir. 1992); *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir. 1979); *Sessions v. Chrysler Corp.*, 517 F.2d 759, 760-61 (9th Cir. 1975); *Dostchay v. Nat'l Mut. Ins. Co.*, 246 F.2d 221, 223 (5th Cir. 1957); *Simmons v. Cmty. Serv. Providers, Inc.*, 847 F. Supp. 351, 352-53 (E.D. Pa. 1994).

## III.  DISCUSSION

**A.      Dismissal of Count IV:  42 U.S.C. § 1983 (Equal Protection)**

Plaintiffs assert that Defendants Kingston and Goldstein, in violation of 42 U.S.C. § 1983 ("Section 1983"), denied them equal protection of the law by violating the City's policies with respect to the acquisition of the subject property and the relocation of their business. Specifically, Plaintiffs argue: (1) that Defendants Kingston and Goldstein failed to negotiate a purchase price for the subject property at or above appraised fair market value, as required by City policy; (2) that Defendants Kingston and Goldstein failed to provide Plaintiffs with the maximum amount of relocation assistance available, as required by City policy; and (3) Defendants Kingston and Goldstein treated Plaintiffs differently than other similarly situated businesses with respect to the acquisition and relocation of the subject property.

In order to state a claim under Section 1983,[2] a plaintiff must allege: (1)  that the conduct of which he complains was committed by a person acting under color of state law; and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  42 U.S.C. § 1983 (2006).  *See, e.g., West v. Atkins*, 487 U.S. 42, 48 (1988). In this case, Plaintiffs assert Section 1983 claims only against Defendants Kingston and Goldstein.  As to Kingston and Goldstein, the Court will separately address whether Plaintiffs have sufficiently alleged the two required elements to state a Section 1983 claim.

---

[2] Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983 (2006).

### 1.      Defendant Kingston

Plaintiffs allege that Kingston, serving as both Secretary/Treasurer of NNEDA and Director of the City's Department of Development, "spearheaded" the efforts of acquiring Plaintiffs' property and the efforts to displace and relocate Plaintiffs for the City's purpose of constructing a new police headquarters.  Plaintiffs allege that such actions, in violation of their Fourteenth Amendment right to equal protection, were taken by Kingston in her individual capacity, acting under the color of state law.

### a.      Acting Under the Color of State Law

"The traditional definition of acting under color of state law requires that a defendant in a [Section] 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Atkins*, 487 U.S. at 49 (internal quotations omitted).  The "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action 'under color' of state law." *Monroe v. Pape*, 365 U.S. 167 (1961).

In this case, Plaintiffs assert that state law gives the City the broad powers to take actions as necessary to secure and promote the general welfare, health, and safety of the City.  *See* VA. CODE ANN. § 15.2-1102 (2006).  Plaintiffs allege that Kingston, through her position with the City and its political subdivisions, possessed the power to carry out actions relating to acquiring property for the general welfare of the City, in this case building the police department headquarters.  (Pls.' Am. Mot. for J. ¶¶ 88-89, 114).  In carrying out this purpose, Kingston also had the power to displace and relocate Plaintiffs from property the City needed for the project.  As a result, Plaintiffs allege that Kingston, using the authority vested in her by state law, acted

under the color of state law as necessary to state a valid Section 1983 claim.  Based on the

foregoing allegations, the Court finds that Plaintiffs sufficiently allege that Kingston acted under

the color of state law.

**b.     Deprivation of a Right Secured by the Constitution**

Plaintiffs assert that Kingston treated them unfairly in both the acquisition and relocation

of their property and business.  In regards to the acquisition of Plaintiffs property, Plaintiffs assert

that NNEDA, through the efforts of Kingston, paid them $373,644.24 for the subject property,

however, the City purchased property from Kings One Ltd. for $1.2 million.  Plaintiffs argue that

both properties were purchased for the purposes of building the police headquarters, thus making

the acquisitions similar in nature and Plaintiffs similarly situated.  Plaintiffs assert that the "gross

disparity between the acquisitions" support their argument that they were not offered fair market

value for their property, while other similarly situated persons were offered fair market values in

accordance with City policy.  With respect to the relocation efforts, Plaintiffs assert that they

were treated unfairly in the award of the NNUDAG loan.  Specifically, Plaintiffs argue that

LARDA Autoworks, a white owned business, was awarded a NNUDAG loan amount that fully

subsidized its relocation project, while Plaintiffs, a black owned business, did not receive an

amount to fully subsidized its relocation costs.  Plaintiffs allege that they were similarly situated

with LARDA Autoworks, because both properties were acquired and relocated in connection

with the City's municipally funded project.  Plaintiffs allege that the unfair treatment was a result

of intentional racial discrimination on the part of Kingston.  In response, Kingston argues that

Plaintiffs fail to reference a statute, or otherwise law, upon which their claim of unequal

protection is based.  Further, Kingston argues that Plaintiffs have failed to set forth the requisite

criteria to claim status as a "class of one."  The Court finds Kingston's arguments misguided, based on the facts, as alleged by Plaintiffs.

The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.CONST. amend XIV, § 1.  In analyzing Section 1983 violations of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege at the outset that he was treated differently from others who were similarly situated, and that such unequal treatment was the result of intentional or purposeful discrimination.  *See Blagman v. White*, 112 F. Supp. 2d 534, 538 (E.D.Va. 2000); *Cleburne v. Cleburne Living Center Inc.*, 473 U.S. 432, 439 (1985) (explaining that the Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike").  We cannot escape the central purpose of the equal protection clause, "the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976).  The Equal Protection Clause bars a governing body from applying a law dissimilarly to people who are similarly situated.

In this case, Plaintiffs allege that Kingston treated them differently from other similarly situated individuals, by carrying out actions inconsistent with the City's displacement and relocation policies.  Although Kingston argues that there is no ordinance or policy in existence to regulate relocation and acquisitions, Plaintiffs have clearly alleged that such a policy does exist. Until such discovery is done to reveal that the City does not have such a policy, the Court must take Plaintiffs allegations as true.  *See McNair*, 95 F.3d at 327.  Accordingly, the Court finds that Plaintiffs have sufficiently alleged a policy, the violation of which resulted in their claim of

unequal protection.

Additionally, in alleging that Kingston deprived them of their Fourteenth Amendment right, Plaintiffs specifically point to her recommendation to NNRHA concerning the different loan amounts awarded to Plaintiffs and LARDA Autoworks.  Such allegations, illustrate Kingston's participation or causation in the deprivation of Plaintiffs rights.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.").  Further, the Court finds that based on the allegations, Plaintiffs may bring their claim as a class of one.  *See Village v. Willowbrook v. Olech*, 528 U.S. 562 (2000) ("cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently form others similarly situated ant that there is no rational basis for the difference in treatment.").  For these reasons, Plaintiffs have sufficiently set forth a Section 1983 claim against Kingston, and her motion to dismiss Count VI is **DENIED**.

## 2.  Defendant Goldstein

Plaintiffs allege that Goldstein, serving as NNEDA's attorney, combined with Kingston to acquire, displace, and relocate Plaintiffs in a manner inconsistent with City policy, and thus in violation of their Fourteenth Amendment right to equal protection.  Given that Goldstein is not an officer of the state, the Court must first determine whether Goldstein acted under the color of state law.

**Acting Under the Color of State Law**

As previously established, a plaintiff must allege that the conduct of which he complains was committed by a person acting under color of state law.  *Atkins*, 487 U.S. at 48.  Goldstein moves for dismissal on the basis that he did not act under the color of state law, and therefore can not be a state actor for the purposes of liability under Section 1983.  Specifically, Goldstein asserts that at all times he acted as a private attorney providing legal advice and legal services to NNEDA.  Goldstein argues that such acts do not transform him into a state actor.  In response, Plaintiffs argue that because Goldstein conspired with Kingston, a state official, Goldstein's actions may be considered to be taken under the color of state law for the purposes of stating a Section 1983 claim.

Generally, a private attorney representing a client does not act under the color of state when "performing traditional functions as counsel for a defendant."  *Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981) (finding that a public defender, appointed and paid by the state, was not acting under the color of state law when exercising her independent professional judgment in a criminal proceeding).  However, a private individual may be subject to liability under Section 1983 if he willfully collaborates with an official state actor in the deprivation of a federal right. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970) ("Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.") (quoting *United States v. Price,* 383 U.S. 787, 794 (1966)).  *See Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

In this case, Plaintiffs allege that Goldstein acted under color of state law by acting jointly with Kingston, a public official.  However, Plaintiffs fail to make any allegations that such acts

were not in the form of his traditional functions as counsel.  When acting as counsel for a client it is not outside of the scope of the agency relationship to advise, combine or act jointly in making decisions with respect to a transaction, in this case acquiring property for the City.  Plaintiffs do not allege that Goldstein was acting outside his relationship as counsel to NNEDA in advising and consulting with Kingston.  Accordingly, the Court can not construe the allegations to mean that Goldstein was not performing actions that related to his role as counsel to NNEDA where such allegations have not been made.  *See Shooting Point, L.L.C. v. Cumming*, 243 F. Supp. 2d 536, 537 (E.D. Va. 2003) ("to state a claim for civil conspiracy under section 1983, a plaintiff must make something more than a naked assertion of conspiracy between a state actor and private parties.").  For this reason, Plaintiffs are unable to establish that Goldstein acted under the color of state law, and therefore fail to state a claim against Goldstein under Section 1983.  Goldstein's Motion to Dismiss Count IV is **GRANTED**.

## B.   Dismissal of Count V:  42 U.S.C. § 1981

Plaintiffs allege that Goldstein purposefully discriminated against Plaintiffs based on their race.  Specifically, Plaintiffs argue that Goldstein, in negotiating for the sale of the subject property, used improper means to acquire the subject property at a price far below fair market value.  Goldstein moves for dismissal, arguing that Plaintiffs failed to show any actions that he took which establish an intent to discriminate on the basis of race.[3]  The Court finds Goldstein's argument meritorious.

---

[3]  Goldstein filed a Motion for Leave to File a Supplemental Brief in Support of its Motion to Dismiss with respect to the Section 1981 claim.  For the purposes of this analysis, the Court finds the supplemental brief unnecessary, thus Goldstein's Motion for Leave to File is **DENIED**.

To maintain a suit under 42 U.S.C. § 1981 ("Section 1981"),[4] the plaintiff must allege intentional or purposeful discrimination. *Patterson v. McClean Credit Union*, 491 U.S. 164 (1989). In this case, as to Goldstein, Plaintiffs fail to allege facts that establish an intent to discriminate. Plaintiffs allege only that when negotiating for the sale of the subject property, Goldstein used privileged information to secure the option to purchase. Plaintiffs fail to allege facts to indicate that the use of such privileged information, either directly or indirectly, establish that Goldstein intended or purposefully discriminated against Plaintiffs on the basis of race. For that reason, Goldstein's Motion to Dismiss Count V is **GRANTED**.

**C.     Dismissal of all claims on the basis of:  Statute of Limitations**

Defendants Morgan, Kingston, and Winstead move for dismissal of all claims on the grounds that Plaintiffs' claims are barred by the statute of limitations. Specifically, the above referenced Defendants argue that under VA. CODE ANN. § 8.01-248 (2006), a two year statute of limitations bars Plaintiffs' claim because the claims are based on personal interests that occurred more than two years before Plaintiffs filed the instant action. Plaintiffs, in response, argue that the claims arise out of damages to their property interests. As such, Plaintiffs argue that they enjoy a five year statute of limitations.

Plaintiffs cite to a recent Richmond Circuit Court case, *Garraghy v. Tirado*, No. LT-380-4 (Va. Cir. Sept. 28, 2005), which fully supports Plaintiffs' contention that their claims under tortious interference with contract and tortious interference with economic expectancy fall within

---

[4] Section 1981 provides in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is employed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other" 42 U.S.C. § 1981 (2006).

"the five-year statute of limitations provided for in Va. Code § 8.01-243(B), not the two-year

catch all limitation of § 8.01-248." (citing *Worrie v. Boze*, 95 S.E.2d 192 (1956) for support).

The Court finds this case on point, and thus finds that Plaintiffs' claims are not time

barred.

**D.      Dismissal of all Claims on the basis of: Purchase Agreement Release Language**

Defendants Morgan, Kingston, and Winstead argue for the dismissal of all claims on the

grounds that the Seller's Possession Agreement ("Possession Agreement") entered into between

Plaintiffs and NNEDA contains language whereby Plaintiffs released all claims relating to the

purchase of the subject property.  In response, Plaintiffs assert that Defendants Morgan,

Kingston, and Winstead are not parties to the contract, or contemplated third party beneficiaries.

Thus, they have no claim under the language in the Possession Agreement.  Further, Plaintiffs

argue that even assuming the Possession Agreement language could be read for the proposition

that they released all claims, NNEDA would be equitably estopped from making the argument

based on its bad faith conduct and unfair dealings during negotiations and all periods thereafter.

The Court finds this argument persuasive.  The rule of estoppel adopted in Virginia is as follows:

> The general rule of equitable estoppel . . . is that when a person, by
> his statements, conduct, action, behavior, concealment, or even
> silence, has induced another, who has a right to rely upon those
> statements, etc., and who does rely upon them in good faith, to
> believe in the existence of the state of facts with which they are
> compatible, and act upon that belief, the former will not be allowed
> to assert . . . the existence of a different state of facts from that
> indicated by his statements or conduct, if the latter has so far changed
> his position that he would be injured thereby.

*Moyers Coal Corporation v. Thited*, 160 S.E. 43 (1931).  Throughout the complaint, Defendants

allege misconduct and unfair dealings on the part of NNEDA.  Based on these allegations, the Court

15

can not find that sufficient grounds exist to dismiss all claims based only on the language in the Purchase Agreement.

**E.     Dismissal of all claims against NNEDA and City on the basis of:  Doctrine of Sovereign Immunity**

Defendants NNEDA and City both argue that under the doctrine of sovereign immunity they are immune from Plaintiffs' state law claims of Tortious Interference with Contract, Tortious Interference with Economic Expectancy, violation of the Virginia Business Conspiracy Act, VA. CODE ANN. §§ 18.2-499 to 501 (2004), and common law tort of Conversion, Counts I, II, III, and VI respectively.  Specifically, Defendants NNEDA and City argue that the acquisition of the subject property, for use in building a new police department, is a governmental function that necessitates sovereign immunity protection from any tort liability.  With respect to the City, Plaintiffs argue that the City was not outwardly involved in negotiating the purchase of the subject property, and the City did not acquire title in its name.  As such, Plaintiffs assert that the City can not be said to have engaged in a governmental function.  With respect to NNEDA, Plaintiffs argue that immunity should not be extended to NNEDA because the option contact to purchase the subject property was acquired in bad faith.

Sovereign immunity protects municipalities from tort liability arising from the exercise of governmental functions.  *City of Virginia Beach v. Carmichael Development Co.*, 527 S.E.2d 778, 783 (2000).  However, municipalities are not shielded from liability where they perform proprietary functions.  *Id*.  Proprietary functions are performed primarily for the benefit of the municipality, whereas governmental functions are ones performed exclusively for the public welfare.  *Id*.  The Virginia Supreme Court "has consistently held that when a municipality plans,

designs, regulates or provides a service for the common good, it performs a governmental function." *City of Chesapeake v. Cunningham*, 604 S.E.2d 420, 426 (2004). "When a locality acquires real estate for a valid governmental purpose, whether by contract or condemnation, that act is governmental in nature." *Carmichael*, 527 S.E.2d at 783. The maintenance and operation of a police department has been held to be a valid governmental function. *Hoggard v. City of Richmond*, 200 S.E. 610 (1939).

In this case, NNEDA serves as the City's economic development arm, and has the power to buy and develop land for economic development purposes. NNEDA is staffed by the City's Department of Development, and City Council appropriates NNEDA's annual operating budget. (Pls.' Am. Mot. for J. ¶ 12). Based on the foregoing facts, it is clear that NNEDA is nothing more than an extension of the City, which has the power to act on the City's behalf. As such, NNEDA, as well as the City, were actively engaged in acquiring the subject property for the purposes of constructing a new police headquarters. Clearly, this purpose benefits the general welfare of the public. As such, the City and NNEDA were engaged in a governmental function that deserves the protection of sovereign immunity.

However, in rebuttal, Plaintiffs argue that the City had a proprietary interest in acquiring the subject property, and thus, as a matter of law, can not be shielded by the sovereign immunity armor. Specifically, Plaintiffs assert that the City had a proprietary interest in acquiring the subject property for as cheap as possible. The Court finds this argument without merit. Even assuming the City had a proprietary interest in saving money in the acquisition of the subject property, the overriding factor was for a governmental function. *See Carmichael*, 527 S.E.2d at 782 (stating that "when governmental and proprietary functions coincide, 'the governmental

function is the overriding factor' and the doctrine of sovereign immunity will shield the locality

form liability.') (citing *Taylor v. Newport News,* 197 S.E.2d 209, 210 (1973)).  However, the

Court's inquiry does not end here.  It is well established that when the state, or an agent acting

on its behalf, enters into a valid contract it waives its sovereign immunity defense so that it may

be sued for breach of contract.  *Wiecking v. Allied Medical Supply Corp.*, S.E.2d 258, 260 (Va.

1990).  Plaintiffs argue that, notwithstanding the doctrine of sovereign immunity, they should be

allowed to sue NNEDA for violating its duty to deal with them in good faith.  This argument,

however, is unavailable to Plaintiffs given that they fail to allege that NNEDA breached the

Option Contract, and in fact state otherwise in their Memorandum in Opposition to the Motion

to Dismiss.  (See Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss at 23).  Accordingly, NNEDA

and the City are shielded from liability on Counts I, II, III, and VI.

**F.     Dismissal of Count I:  Tortious Interference with Contract**

To properly state a claim for Tortious Interference with Contract, a plaintiff must allege

the following: (1) the existence of a valid contractual relationship or business expectancy, (2)

knowledge of the relationship or expectancy on the part of the interfering party, (3) intentional

interference inducing or causing a breach or termination of the relationship or expectancy, and

(4) resulting damage to the party whose relationship or expectancy has been disrupted.

*Rappahannock Pistol & Rifle Club, Inc. v. Bennett*, 546 S.E.2d 440 (2001).  Where the contract

is terminable at-will, the third element requires proof not only of intentional interference

inducing or causing a breach, but also that the interferor employed improper methods.  *See*

*Duggin v. Adams*, 360 S.E.3d 832, 836 (1987).

Plaintiffs allege that, "the defendants were aware at all times relevant that plaintiffs

possess contracts to provide health and assisted care to the Alzheimer's patients receiving services at the Golden Years facility." (Pls.' Am. Mot. for J. ¶ 75). Therefore, it is undisputed that Plaintiffs have alleged elements one and two of their claim for Tortious Interference with Contract. Defendants argue, however, that Plaintiffs fail to allege element three, that the contracts with any of the patients were in fact breach or terminated as a result of Defendants' interference. The Court agrees with Defendants.

In this case, Plaintiffs never specifically allege that any of the contracts with its patients were actually terminated. In fact, a Possession Agreement existed between Plaintiffs and Defendant NNEDA allowing Plaintiffs to continue to provide services to their patients on the subject property. This Possession Agreement was renewed several times. Further, since Plaintiffs fail to allege the termination of any contracts with its patients, they have also failed to allege element four, that the termination resulted in damages. Accordingly, Plaintiffs fail to properly state a claim for Tortious Interference with Contract, and Defendants' Motions to Dismiss Count I are **GRANTED**.

## G.   Dismissal of Count II:  Tortious Interference with Economic Expectancy

Under Virginia law, to properly state a cause of action for Tortious Interference with Economic Expectancy a plaintiff must allege the following: (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff, (2) defendant's knowledge of the relationship or expectancy, (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy, and (4) damages to plaintiff. *Williams v. Dominion Tech. Partners, LLC*, 576 S.E.2d 752 (2003). Additionally, Virginia case law applying the tort of intentional

interference with a business expectancy have found two additional unstated de facto prima facie

elements of a claim for tortious interference with a business expectancy: (1) a competitive

relationship between the plaintiff and the defendant and (1) contact by the defendant with the

source of the plaintiff's business expectancy. *See 17th Street Assoc., LLP v. Market*

*International Insurance Co.*, 373 F. Supp. 2d 584, 600-01 (E.D. Va. 2005) (citing several

Virginia cases that support a finding that there are two additional unstated elements of a claim

for tortious interference with business expectancy). The logic behind these two additional

elements is that "they provide prima facie evidence of a motive to interfere and indicate that the

interference actually took place." *Id.* at 601.

Plaintiffs assert that they had  an economic expectancy in the continued provision of

health and assisted care to Alzheimer's patients and in relocating to an expanded facility which

would have allowed Plaintiffs to increase the number of patients it served. Plaintiffs argue that

Defendants interfered with this economic expectancy by (1) failing to purchase and renovate the

relocation property and then sell or lease it back to Plaintiffs; (2) failing to pursue all possible

relocation options, or even advise the Plaintiffs of them; and (3) seeking and attempting to place

Plaintiffs' patients in alternative facilities so that Plaintiffs could be ejected from the subject

property. In moving for dismissal of Count II, Defendants argue that Plaintiffs never

specifically allege that Defendants intentionally and improperly interfered with the performance

of the contracts with their patients. Defendants Sheild, Goldstein, and Law Firm, specifically,

argue that Plaintiffs failed to allege that a competitive relationship existed. The Court finds the

latter argument persuasive.

In this case, Plaintiffs fail to allege that a competitive relationship existed between it and

any of the Defendants.  In fact, Plaintiffs can not allege that a competitive relationship existed, because none of the Defendants are in the business of providing assisted living to patients, and therefore can not be competitors.  Accordingly, Plaintiffs fail to state a claim for Tortious Interference with Economic Expectancy, and thus Defendants' Motions to Dismiss Count II are **GRANTED**.

**H.      Dismissal of Count III:  Statutory Conspiracy**

Plaintiffs allege that Defendants were engaged in a conspiracy to injure their business and ultimately drive them out of business.  First, Plaintiffs allege that Sheild, acting as their counsel, conspired with Goldstein, acting as counsel and agent of NNEDA, the City, and its employees to cause injury to Plaintiffs' business by intentionally assisting in the acquisition of the subject property without it first being appraised, and acquiring it below fair market value and under false pretenses without a plan for Plaintiffs' relocation.  Second, Plaintiffs allege that Sheild, acting as their counsel, conspired with Kingston, Winstead, and Morgan to injure Plaintiffs in their business by acquiring the subject property below fair market value, and failing to successfully relocate Plaintiffs.

A claim for statutory conspiracy arises under VA. CODE ANN. § 18.2-499 where a plaintiff alleges two elements: (1) a combination of two or more persons for the purpose of willfully and maliciously injuring the plaintiff in his business, and (2) resulting damage to the plaintiff.  *Fox v . Deese*, 362 S.E.2d 699 (1987).  However, where the individuals are agents of the same corporation, Virginia has adopted the intracorporate immunity doctrine.  This doctrine holds that since the corporation is an artificial entity that can only act through its authorized agents, officer, and employees, a conspiracy cannot be formed between its own agents or

employees acting within the scope of their employment. *Selman v. American Sports Underwriters, Inc.*, 697 F. Supp. 225 (W.D. Va. 1988). However, the doctrine of intracorporate immunity is excepted under two circumstances: (1) when an agent of the corporation has an independent personal stake in achieving the corporation's illegal objective, or (2) when the agent is engaged in unauthorized acts. *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004). *See Selman*, 697 F. Supp. at 239. In *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 400 (4th Cir. 1974) the Fourth Circuit found that the independent personal stake exception applied where the defendant, who was president and director of the corporation, was exempted from the intracorporate immunity doctrine because he had a financial stake in an outside entity which stood to benefit financially from the illegal objective of the corporation.

Similar to *Greenville*, the Court finds that Plaintiffs' have alleged that Goldstein had an independent personal stake in achieving the law firm's illegal objective. Specifically, Plaintiffs allege facts that Goldstein would receive municipal bond work if the deal with the Plaintiffs came to fruition. Accordingly, by engaging in the alleged illegal objective, Goldstein stood to benefit independently from the transaction. For this reason, with respect to an alleged conspiracy between Sheild and Goldstein, the Court finds that the two are not immunized by the corporate immunity doctrine. Further, although a less well recognized exception, the Plaintiffs have sufficiently alleged facts that Goldstein and Sheild participated in unauthorized acts which would bar the application of the corporate immunity doctrine. Specifically, Goldstein and Sheild as partners at the same law firm, represented adverse parties in the same transaction. The Court finds that an action of that nature fits within the unauthorized act exception. *See Buschi v. Kirven*, 775 F.2d 1240, 1252-53 ("while authorized acts of the officials would constitute

22

corporate actions, (and hence would avoid a conspiracy charge), unauthorized acts would not.")

(citing *Hodgin v. Jefferson*, 447 F. Supp. 804, 807 (D. Md. 1978).

With respect to Kingston, Morgan, and Winstead, the Court finds that Plaintiffs fail to allege any acts wherein these individuals engaged in contact, communication, or otherwise  with Sheild to satisfy the heightened pleading requirement for a conspiracy claim.  Plaintiffs' broad allegations provide no factual basis of the method of the alleged conspiracy and how it was carried out.  *See Gov't Empls Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) ('business conspiracy, like fraud, must be pleaded with particularity, and with more than mere conclusory language.") (quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal quotations omitted).  Accordingly, the Court finds the pleadings insufficient to establish a conspiracy under VA. CODE ANN. § 18.2-499 between Sheild and Kingston, Winstead, or Morgan.  For the above reasons, as to Kingston, Winstead, and Morgan the Motion to Dismiss Count III is **GRANTED**, however, as to Sheild and Goldstein the Motion to Dismiss Count III is **DENIED**.

I.      **Dismissal of Count VI: Conversion**

Plaintiffs allege that Defendants converted the subject property by acquiring it below market value using "unethical and unfair conduct."  Defendants move for dismissal of Count VI on the grounds that conversion does not apply to interests in real property.

Conversion is the "wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession;[and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it."  *Hairston Motor Company v. Newsom*, 480 S.E.2d 741, 744 (1997), *quoting Universal C.I.T. Credit Corp. v. Kaplan*, 92

S.E.2d 359, 365 (1957).  However, Virginia has not recognized the tort of conversion over the wrongful exercise of authority over real property.

In this case, Plaintiffs are claiming conversion of real property.  The conversion of real property has not been recognized in Virginia.  Further, even assuming conversion did apply in the context of real property, Plaintiffs fail to allege that Defendants have been deprived of the possession of the subject property.  Pursuant to the Seller's Possession Agreement, Plaintiffs have continued to operate their business on the subject property.  Accordingly, the conversion claim fails as a matter of law.  Defendants' Motions to Dismiss Count VI are **GRANTED.**

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss Counts I, II, and VI are **GRANTED**.  As to Count III, the Motion to Dismiss of Kingston, Winstead, and Morgan is **GRANTED**, however, the Motion to Dismiss Count III of Goldstein and Sheild is **DENIED**.  Kingston's Motion to Dismiss Count IV is **DENIED**.  Goldstein's Motion to Dismiss Count IV and Count V is **GRANTED**.  Additionally, Goldstein's Motion for Leave to File a Supplemental Brief is **DENIED**.  The Court **DIRECTS** the parties to immediately schedule a conference before a Magistrate Judge of this Court to settle this case.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

_____ /s / _____
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 3  ,2006