IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**ROBERT WHITAKER, et al.,**

    **Plaintiffs,**

    v.                                   **CIVIL ACTION NO. 4:05cv130**

**CONWAY H. SHEILD, III et al.,**

    **Defendants.**

*MEMORANDUM OPINION AND ORDER*

This matter comes before the Court on the Motion For Summary Judgment of Conway H. Sheild, III ("Sheild") and Jones, Blechman, Woltz & Kelly, P.C. (the "Law Firm") (collectively, "Defendants") to enter judgment in their favor on Count VII (Legal Malpractice) and Count VIII (Breach of Fiduciary Duty) of Robert Whitaker ("Mr. Whitaker"), Barbara Whitaker ("Ms. Whitaker"), and the Golden Years, Inc., t/a BWC Adult Home ("Golden Years") (collectively, "Plaintiffs") Amended Motion for Judgment. For the reason set forth below, Defendants' Motion for Summary Judgment is **DENIED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Ms. Whitaker is the President of Golden Years, Inc., a minority-owned Virginia corporation that provides assisted living to patients with dementia and Alzheimer's disease. Golden Years, Inc. owned property for the operation of its business at 9712 Jefferson Avenue, and 600 Woodfin Road in Newport News, Virginia ("the subject property").

On or about February 14, 2002, Defendant Goldstein, an attorney, principal, and

shareholder of the Law Firm, approached Ms. Whitaker with an interest in purchasing the subject property for $355,000. At that time, Ms. Whitaker informed Goldstein that she would need to speak to her lawyer about any proposed sale of the subject property. Ms. Whitaker and her lawyer, Defendant Sheild, held a meeting at his office. While waiting for her meeting Ms. Whitaker saw Goldstein at the law office, and took notice that his name was on the firm's marquee. In her meeting with Sheild, she asked whether Goldstein and Sheild worked together. Initially, Sheild denied knowing or affiliating with Goldstein, however, he later admitted that Goldstein also worked at the Law Firm, and that they were both partners. Sheild reassured Ms. Whitaker that her file would be "hidden" from Goldstein. During the meeting Ms. Whitaker informed Sheild that she believed Goldstein's offer was too low, as it was barely enough to pay-off the existing mortgage loans. Even with Ms. Whitaker's concerns, Sheild urged her to accept the option to purchase the subject property on Goldstein's terms.

Taking the advice of Sheild, on May 10, 2002, Plaintiffs entered into an option real estate contract with Goldstein. Goldstein entered into the contract on behalf of NNEDA. NNEDA are political subdivisions of the Commonwealth of Virginia charged with the task of creating new jobs and diversifying the City's economy. NNEDA acquired the land for the purposes of constructing a new police headquarters. At the time Plaintiffs executed the option contract with Goldstein, they were unaware that he was acting as a representative of NNEDA, and they were also unaware of the future purposes for the acquisition of the subject property. On the other hand, Sheild, Plaintiffs counsel, knew that Goldstein represented NNEDA and he knew the reason NNEDA desired to purchase the land from Plaintiffs. However, Sheild failed to disclose this information to Plaintiffs.

In July 2002, Tricia Wilson ("Wilson"), Business Development Specialist for the City, and former Business Retention/Development Coordinator, John Vann ("Vann") had a discussion in which Wilson told Vann that Goldstein "took advantage of a conflict of interest" between him and his law partner, Sheild. Wilson also informed Vann that Winstead, the City's Manger of Financial Services, had used derogatory and discriminatory language when referring to Plaintiffs. In August 2002, the City formed a relocation team to assist Plaintiffs in relocating to another area after the City's acquisition of the subject property. During this time period, meetings were held to discuss several options with respect to the acquisition of Plaintiffs' property and the relocation of their business. However, no actions were taken on any of the options. In fact, Vann held a meeting with NNEDA chairman, Allen Jones to discuss the manner in which Plaintiffs were being treated. Vann was told that Plaintiffs were being treated unfairly because they were black.

On March 7, 2003, NNEDA executed a Seller's Possession Agreement that allowed Plaintiffs to remain on the subject property until September 30, 2003.[1] On October 6, 2003, Plaintiffs executed a sales contract for the purpose of relocating to a new location. During this period of time, Plaintiffs incurred more than $160,000 in costs associated with their efforts to relocate. On February 23, 2004, Vice Mayor Charles Allen voiced his concerns about the "conflict of interest" between Defendants Goldstein and Sheild, and instructed the City to give Plaintiffs the "maximum assistance to relocate." On February 25, 2004, Ms. Whitaker met with City Manger, Edgar Maroney, to voice her concern about the unfair manner in which she believed Plaintiffs were being treated because of their race. During this period of time Plaintiffs continued to make attempts to procure private loans to fund the acquisition and renovation of

---

[1] NNEDA later extended the Seller's Possession Agreement through December 31, 2004.

their projected relocation property. However, Plaintiffs were unsuccessful in these attempts.

On March 1, 2004, Wilson wrote a letter to Ms. Whitaker to inform her that Plaintiffs could qualify for a Newport News Urban Development Action Grant ("NNUDAG") loan from the Newport News Redevelopment and Housing Authority ("NNRHA"), political subdivision of the Commonwealth. The NNUDAG loan is used to provide low-interest loans to businesses which generate employment for low-income residents. The City approached the NNRHA about the possibility of providing Plaintiffs with a NNUDAG loan for the acquisition and renovation their relocation property. The City, in conjunction with NNRHA, had previously awarded a NNUDAG loan to LARDA Autoworks to help it relocate after the City acquired its building for the same municipally funded project. Plaintiffs submitted the necessary paperwork to process their NNUDAG loan application. On July 12, 2004, Plaintiffs received a NNUDAG loan commitment letter authorizing them to borrow $300,000 to finance the acquisition and renovation of their relocation property. Plaintiffs signed the loan documents on July 27, 2004. However, Plaintiffs believed that based on the lending criteria for a NNUDAG loan, they should have qualified for a loan amount of $500,000.

On December 29, 2004, Plaintiffs received a letter from NNEDA advising them that counsel had been retained to institute a suit requiring Plaintiffs to vacate the subject property and pay any unpaid rents.

Plaintiffs initially filed a Motion for Judgment in the Circuit Court of the City of Newport News. However, on August 31, 2005, Defendants filed a Notice of Removal with this Court. On September 26, 2005, Defendants filed separate Motions to Dismiss. On October 11, 2005, Plaintiffs filed a Memorandum in Opposition to the Motions to Dismiss. On October 18, 2005,

City filed its reply. The other defendants filed their replies on October 18, 2005. On December 21, 2005, this Court held a hearing on all motions. As a result of the hearing, the Court granted Plaintiffs thirty days to file a complaint amending Counts IV and V. On January 20, 2006, Plaintiffs filed their Amended Motion for Judgment. On February 2, 2006, Defendants Sheild, Goldstein, Law firm, and City filed Motions to Dismiss the complaint. On February 6, 2006, NNEDA filed a Motion to Dismiss. Defendants Morgan, Kingston, and Winstead filed their Motion to Dismiss on February 9, 2006. On February 15, 2006, Plaintiffs filed a Memorandum of Law in Opposition to Goldstein's Motion to Dismiss. Additionally, on February 23, 2006, Plaintiffs filed a Memorandum of Law in Opposition to Kingston's Motion to Dismiss. On March 3, 2006, Kingston filed its reply. On April 13, 2006, the Court conducted a final hearing on the Motions. On May 3, 2006, the Court issued a Memorandum Opinion and Order in which it dismissed several parties and claims. Sheild and the Law Firm's Motion for Summary Judgment is now ripe for adjudication by the Court.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)); *Haulbrook v. Michelin North Amer., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001)(citing *McKinney v. Bd. of Trustees*, 955 F.2d 924, 928 (4th Cir. 1992)("[S]ummary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law.") In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in

the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

**III DISCUSSION**

In Counts VII and VIII Plaintiffs allege that Sheild, acting as their attorney, and the Law Firm are liable for legal malpractice and breach of fiduciary duty arising from Sheild's representation of Plaintiffs during the negotiation and entry into the option contract with Goldstien, a partner in the same law firm, to sell the subject property. Specifically, Plaintiffs allege that Sheild breached his fiduciary duty by: (1) advising Plaintiffs that their properties would be foreclosed upon if they did not enter the option contract, (2) failing to advise Plaintiffs of the conflict of interest that existed because Goldstein represented the City and NNEDA, adverse parties to the deal, (3) failing to advise Plaintiffs to have the subject property appraised prior to selling it, (4) failing to advise Plaintiffs on the effect the sale of the subject property would have if a new location was not obtained, and (5) failing to disclose that Goldstein sought to acquire the subject property on behalf of the City and NNEDA, for the purposes of constructing the City's new police headquarters. Plaintiff's allege that the above actions constitute a breach of fiduciary duty and are grounds for a legal malpractice claim.

In response, Defendants assert that Plaintiffs' allegations are not true. Specifically, they contend that: (1) Sheild was correct in advising Plaintiffs that the property would be foreclosed because Plaintiffs were in default on the note and a foreclosure sale was scheduled, (2) Sheild disclosed the potential conflict of interest with Ms. Whitaker who consented in writing to his continued representation, (3) Plaintiffs were not damaged by a sale without an appraisal because they received the maximum purchase price authorized by the purchaser which was higher than the assessed value, (4) Plaintiffs suffered no damage from not knowing the purpose for which Goldstein acquired the subject property because they received fair market value for the subject property, and (5) Sheild did not have a duty to advise Plaintiffs of the need to find a new location for their business because it was common knowledge.

In spite of the arguments and affidavits set forth by Defendants, the Court finds that genuine issues of material fact exist on several grounds, primarily with respect to whether Ms. Whitaker waived the conflict of interest. Plaintiffs have gone beyond the pleadings by providing the affidavit of Mr. and Ms. Whitaker, wherein Ms. Whitaker denies executing a letter that waived the conflict, and further denies that Sheild advised Plaintiffs to seek the advice of another attorney concerning the matter. (Whitaker Aff. at 9). As required under Federal Rule of Civil Procedure 56(c), the Court must view the facts in the light most favorable to the non-moving party. In this case, the facts are such that the Court can not grant summary judgment. Plaintiffs specifically allege that Sheild attempted to coverup the fact that he and Goldstein were partners in the same firm, and, in fact, initially denied even knowing Goldstein. (Pls.' Am. Mot. for J. ¶ 20, Whitaker Aff. at 8). Given such facts, the circumstances surrounding the acquisition of the subject property, and Ms. Whitaker's affidavit stating that she does not recall executing a waiver,

the Court finds that Plaintiffs have satisfied their burden in showing that there is a genuine issue of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Accordingly, the Motion for Summary Judgment is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 10, 2006